<span style="color:red">CORRECTED</span>

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0242V

|  |  |
|---|---|
| KATHERINE FRAILING, <br><br>         Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br><br>         Respondent. | Chief Special Master Corcoran <br><br> Filed: June 2, 2026 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Emilie Williams, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On January 7, 2021, Katherine Frailing filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving an influenza ("flu") vaccine on September 25, 2020. Amended Petition at 1, ¶ 1, 8. The matter was assigned to the "Special Processing Unit" (the "SPU"), and although Respondent

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner filed an amended petition on July 8, 2022, providing additional detail and medical record citations. ECF No. 22.

conceded entitlement, the parties were unable to resolve damages on their own,[4] so I ordered briefing on the matter.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$164,856.13, representing $120,000.00 for actual pain and suffering, plus the agreed-upon $5,629.13 for past unreimbursable expenses, as well as $39,227.00 for past lost wages.**

## I.        Legal Standard – Pain & Suffering

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and

---

[4] Approximately fifteen months after I determined Petitioner was entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Oct. 4, 2024, ECF No. 53.

suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.    Prior SIRVA Compensation Within SPU[5]

### A.    Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2026, 5,397 SPU SIRVA cases have resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (5,194), with the remaining 203 cases dismissed.

2,946 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation.[6] In only 351 of these cases, however, was the amount

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] The remaining 2,248 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

of damages determined by a special master in a reasoned decision or ruling.[7] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[8]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[9] Agreement |
|---|---|---|---|---|
| Total Cases | 352 | 2,560 | 34 | 2,248 |
| Lowest | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| 1st Quartile | $66,994.13 | $58,000.79 | $87,750.00 | $30,000.00 |
| Median | **$91,163.89** | **$77,500.00** | **$112,119.37** | **$47,951.60** |
| 3rd Quartile | $125,000.00 | $105,276.51 | $160,376.79 | $73,477.50 |
| Largest | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.    Pain and Suffering Awards in Reasoned Decisions

In the 352 SPU SIRVA cases in which damages were determined via reasoned decision or ruling, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $89,500.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging

---

[7] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,561 cases) or stipulation (34 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[8] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[9] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

from $250.00 to $1,500.00.[10] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[11]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

---

[10] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[11] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

### III.   The Parties' Arguments

The parties agree Petitioner should be awarded $5,629.13 for past unreimbursed expenses,[12] and $39,227.00 for past lost wages.[13] Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's pain and suffering. Petitioner seeks $135,000.00, and Respondent argues for a "lower" amount consistent with a moderate, one-surgery SIRVA. *Compare* Brief at 1, 9, 24; Pet. Reply Brief at 1, 10 *with* Opp. at 13, 16.

Characterizing her SIRVA as severe and debilitating, Petitioner emphasizes her lack of prior pain or dysfunction, her immediate and persistent reports of severe pain which interfered with her ability to perform her duties as an occupational therapist, and her need for acute care including arthroscopic surgery within two months post-vaccination followed by significant PT thereafter. Brief at 11-13. She asserts that "none of her treatments . . . have led to her full recovery" (*id.*at 15), alleging continued but intermittent episodes of discomfort affecting her work. *Id.* at 13-16.

Petitioner favorably compares the facts and circumstances in her case to those suffered by the petitioners in *Reed, Binette, Dawson-Savard,* and *Rafferty*[14] - decisions featuring past pain and suffering awards ranging from $127,500 to $160,000.00. Brief at 17-20. She also identifies a group of surgical SIRVA cases featuring awards in the amount of $125,000.00,[15] insisting that the circumstances of her SIRVA merit a greater pain and

---

[12] Initially, Respondent argued that Petitioner should received only $4,082.44 of the $5,629.13 sought by Petitioner. *Compare* Respondent's Damages Brief ("Opp."), filed Dec. 2, 2024, at 15-16, ECF No. 55 *with* Petitioner's Brief on Damages ("Brief"), filed Dec. 2, 2024, at 1, 9, 24, ECF No. 57; Petitioner's Response to Res. Opp. ("Pet. Reply Brief"), filed Jan. 7, 2025, at 1, 9-10, ECF No. 58. After Petitioner provided additional documentation, Respondent agreed Petitioner should be awarded the full amount sought. Respondent's Supplemental Damages Brief ("Res. Reply Brief"), filed Feb. 4, 2025, at 3, ECF No. 60on).

[13] Throughout the briefing in this case, Petitioner maintained she should be awarded $160,693.00 and $160,893.00 for past lost wages. Pet. Brief at 9, 23-24; Petitioner's Reply Brief at 1, 8, 9. Respondent insisted a lower amount - $39,227.00 was appropriate. Res. Opp. at 13-14; Res. Reply Brief at 3-4. In a joint status report filed on May 22, 2026, and after consulting further with her economic expert, Petitioner agreed that the amount proposed by Respondent was appropriate. ECF No. 65.

[14] *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for past pain and suffering); *Binette v. Sec'y of Health & Hum. Servs.,* No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. July 8, 2019) (awarding $130,000.00 for past pain and suffering and $1,000.00 per year for future pain and suffering); *Dawson-Savard v. Sec'y of Health & Hum. Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020) (awarding $130,000.00 for past pain and suffering and $500.00 per year for future pain and suffering); *Rafferty v. Sec'y of Health & Hum. Servs.,* No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020) (awarding $127,500.00 for past pain and suffering).

[15] *Stokes v. Sec'y of Health & Hum. Servs.,* No. 19-0752V, 2021 WL 6550888 (Fed. Cl. Spec. Mstr. Dec. 17, 2021); *Roberson v. Sec'y of Health & Hum. Servs.,* No. 19-0090V, 2020 WL 5512542 (Fed. Cl. Spec. Mstr. Aug. 7, 2020); *Drake v. Sec'y of Health & Hum. Servs.,* No. 18-1747V, 2020 WL 4674105 (Fed. Cl.

suffering award. Brief at 20. And Petitioner asserts that the $135,000.00 she requests is in line with the awards in numerous cases involving an informal agreement between the parties and the remedial purpose of the Vaccine Act. *Id.* at 20-23.

In contrast, Respondent maintains "[P]etitioner's overall injury was moderate." Opp. at 9. Citing numerous decisions involving SIRVAs requiring a single surgery and featuring past pain and suffering awards ranging from $95,000.00 to $205,000.00,[16] he argues Petitioner's pain and suffering compensation should be on the lower end of this range. Opp. at 11-13. Emphasizing the return to full range of motion experienced by Petitioner in August 2021, he insists the lingering pain Petitioner reported thereafter was "mild-to-moderate in intensity." *Id.* at 13.

In her responsive brief, Petitioner criticizes Respondent's reliance on surgical SIRVA cases with the lowest pain and suffering awards, arguing they constitute poor comparable cases. Pet. Reply Brief at 5-6. She contrasts the more significant treatment gaps in *Hunt, Shelton,* and *Crawford,*[17] as well as the five-month initial delay in treatment in *Shelton.* Pet. Reply Brief at 6-8. Petitioner also stresses the importance of evidence presented by affidavit, especially when consistent with the medical records – as in her case. *Id.* at 4-5. And she criticizes Respondent's failure to address the comparable cases she proposed. *Id.* at 8.

Reiterating his assertion that "[P]etitioner's overall injury was moderate" (Res. Reply Brief at 1), Respondent limited his previous list of comparable cases to *Hunt, Shelton, Crawford, Gray, Rodgers,* and *Meyers*[18] - the six surgery matters featuring the lowest past pain and suffering awards - ranging from $95,000.00 to $125,000.00. Res.

Spec. Mstr. July 7, 2020); *Wallace v. Sec'y of Health & Hum. Servs.,* No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019); *Dobbins v. Sec'y of Health & Hum. Servs.,* No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018).

[16] Respondent cited 10 substantive decisions issued in SPU SIRVA cases – the lowest award in *Hunt v. Sec'y of Health & Hum. Sevs.*, No. 19-1003V, 2022 WL 282662 (Fed. Cl. Spec. Mstr. Jun 16, 2022) and greatest award in *Edminister,* No. 19-0184V, 2023 WL 3059218 (Fed. Cl. Spec. Mstr. Apr. 24, 2023).

[17] *Hunt*, 2021 WL 6550888; *Shelton v. Sec'y of Health & Hum. Servs.,* No. 19-0279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 for past pain and suffering); *Crawford v. Sec'y of Health & Hum. Servs.,* No. 19-0544V, 2024 WL 1045147 (Fed. Cl. Spec. Mstr. Feb. 5, 2024) (awarding $105,000.00 for past pain and suffering).

[18] The citations for *Hunt, Shelton,* and *Crawford* can be found in *supra* notes 16 - 17. The citations for *Gray, Rodgers,* and *Meyers* are as follows: *Gray v. Sec'y of Health & Hum. Servs.,* No. 20-1708V, 2022 WL 6957013 (Fed. Cl. Spec. Mstr. Sept. 12, 2022) (awarding $110,000.00 for past pain and suffering); *Rodgers v. Sec'y of Health & Hum. Servs.,* No. 18-0558V, 2021 WL 6773160 (Fed. Cl. Spec. Mstr. Dec. 29, 2021) (awarding $117,500.00 for past pain and suffering); *Meyers v. Sec'y of Health & Hum. Servs.,* No. 20-0779V, 2024 WL 706877 (Fed. Cl. Spec. Mstr. Jan. 12, 2024) (awarding $125,000.00 for past pain and suffering).

Reply Brief at 1-2. He favorably compares Petitioner's circumstances to those suffered by the *Meyers* petitioner, who was awarded $125,000.00. *Id.* at 2. Respondent argues, however, that Petitioner's award should be lower due to the more formal treatment the *Meyers* petitioner required, and the improvement Petitioner experienced by August 2021, approximately ten months post-vaccination. *Id.*

## IV.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Ms. Frailing suffered a SIRVA injury accompanied by moderate to mild pain and limited ROM, requiring arthroscopic surgery three months post-vaccination and significant PT.[19] She obtained slight/temporary relief from 12 PT sessions attended prior to surgery, but more significant pain reduction from 37 PT post-surgical PT sessions.[20] At post-surgical visits during the six months following surgery, Petitioner made good and appropriate, albeit gradual, progress. Ex. 5 at 21-22; Ex. 8; Ex. 12 at 6-9. Thereafter, she began to experience minor setbacks. *E.g.,* Ex. 12 at 11-12 (noting continued discomfort and catching at visits on August 3 and October 27, 2021).

---

[19] Petitioner first sought medical treatment 25 days post-vaccination on October 20, 2020, from the orthopedic surgeon she had visited the previous year on June 17, 2019, for right shoulder and neck pain due to a cyst at the top of her shoulder. Ex. 5 at 20-22; *see* Ex. 5 at 11-12, 17-20 (records from x-rays and medical visit in 2019). Noting that Petitioner's earlier pain (from 2019) had "resolved shortly thereafter with therapy type exercises" (*id.* at 20), the orthopedic surgeon observed findings suggestive of adhesive capsulitis, a rotator cuff tear, and possible bursitis possibly due to SIRVA. *Id.* at 21-22. Despite reporting mild to moderate improvement by November 24, 2020 (Ex. 5 at 23), Petitioner called the orthopedic surgeon on December 1, 2020, complaining of a worsening of her symptoms and requesting surgery (*id.* at 24-25). Petitioner's arthroscopic surgery was performed on December 28, 2020. Ex. 6 at 230-32.

[20] Petitioner's pain – estimated as three to five at her initial PT session on October 25, 2020, improved to one by her seventh visit on November 16, 2020. Ex. 13 at 20, 25. During post-surgical PT, Petitioner reported a pain level of five at her initial session on February 16, 2021 (Ex. 13 at 47), which decreased to no pain by her 35th PT session on June 3, 2021 (*id.* at 99).

During the remainder of 2021 through early 2024, Petitioner continued to experience intermittent residual symptoms, especially "following her pregnancy and return back to work type activities" in early 2023. Ex. 19 at 1; *accord.* Ex. 12 at 9-19; Exs. 16, 18-21; *see also* Ex. 12 at 14 (noting pregnancy in late 2021). However, it was also noted that Petitioner suffered cervical issues noted prior to vaccination.[21] And she often complained of increased pain from activities such as reaching for a water ski while in a boat, jamming her shoulder while almost falling on the steps (Ex. 21 at 3, 65) and tension around the shoulder blade (*id.* at 68). Still, Petitioner's difficulties were often related to caring for her efforts to care for her children – an unavoidable responsibility. Ex. 20 at 23, 37, 71. Her frustration was, no doubt, exacerbated by her difficulties in this area, as well as her work-related limitations. Ex. 22 at ¶¶ 6-12 (Petitioner's sworn declaration).

Because Petitioner's course did not follow the usual path for a surgical SIRVA claim – severe pain levels and limitations in ROM, significant MRI findings, a lengthy duration of conservative treatment prior to surgery, and then good relief post-surgery - it is difficult to find a good comparable case. However, the large group of surgical cases involving pain and suffering awards of $125,000.00 referenced by Petitioner, and range of surgical cases cited by Respondent, offer some guidance. And the most helpful comparable cases were *Rafferty* cited by Petitioner, and *Meyers,* which Respondent addressed in detail in his responsive brief. *See* Brief at 19-20; Res. Reply Brief at 2.

I do not find the parties' continued reliance on the following cases to be useful: *Reed, Dawson-Savard,* and *Binette* for Petitioner, and *Hunt* and *Shelton* for Respondent. Due to the severe pain she experienced, the *Reed* petitioner continued to require prescription pain medication for years post-surgery. *Reed,* 2019 WL 1222925, at *8-9. And the *Dawson-Savard* and *Binette* petitioners were assessed as having permanent disabilities and no surgical option. *Dawson-Savard,* 2020 WL 4719291, at *3-4; *Binette,* 2019 WL 1552620, at *8, 13-15. The *Shelton* petitioner did not seek treatment initially until five months post-vaccination, and the *Hunt* petitioner gained significant, albeit temporary, pain relief from multiple steroid injections. *Shelton,* 2021 WL 2550093 at *7; *Hunt,* 2022 WL 2826662, at *9.

In addition to *Rafferty* and *Meyers*, I find *McCabe* – featuring an award of $110,000.00 - to be instructive. *McCabe v. Sec'y of Health & Hum. Servs.,* No. 19-1916V, 2021 WL 6755494 (Fed. Cl. Spec. Mstr. Dec. 29, 2021). Like Petitioner, the *McCabe* petitioner experienced only mild to moderate pain levels prior to surgery and required a significant amount of PT. *Id.* at *10. Although the *McCabe* petitioner enjoyed good relief

---

[21] In June 2019, when treating Petitioner for pain attributed to a cyst at the top of her right shoulder, the orthopedic surgeon observed "posterior neck pain which [he] believe[d] [wa]s from a separate etiology and suggestive of a cervical spine strain." Ex. 5 at 20.

post-surgery, that surgery did not occur until almost 17 months post-vaccination. *Id.* at *7-10. Thus, his overall duration is still similar to, albeit shorter, than Petitioner's. Considering the guidance provided by this case, along with *Rafferty* and *Meyers,* I find Petitioner should receive $120,000.00 for her past pain and suffering.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, I find that **$120,000.00** represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[22] I also find that Petitioner is entitled to **$5,629.13** in actual unreimbursable expenses paid by Petitioner and **$39,227.00** in actual lost wages.

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $164,856.13 to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[23]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[22] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[23] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.